# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR420-098 |
| | ) | |
| DENNIS O'KEEFE HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendant Dennis O'Keefe Harris is indicted on a single count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g).  Doc. 1 (Indictment).  He moves to suppress evidence collected after a traffic stop and his subsequent arrest.  *See* doc. 26.  The Government has responded in opposition to the motion.  *See* doc. 32.  On February 11, 2021, the Court held a hearing on the motion at which two Savannah Police Officers, Ryan Price and Jeremy Freageau, testified and several exhibits were admitted without objection.  *See* doc. 44 (Minute Entry).  The motion is, therefore, ripe for disposition.

In the very early hours of January 1, 2020, Harris' vehicle was stopped by Savannah Police officers.  Once the vehicle stopped in a fast food restaurant parking lot, Harris stepped out of the vehicle before Price

directed him to, but, once he had stepped out, Price told him to remain outside of the vehicle.  When he complied, Price asked Harris whether he had any firearms on his person or in his vehicle, and Harris denied that he did.  Shortly after Price had initiated the stop, Officer Fregeau arrived on the scene.  The evidence of record—including Fregeau's police report, video recorded by his body-worn camera, and his testimony at the hearing—indicates that, as he approached Harris and Price, he observed what he immediately identified as a firearm partially concealed in Harris' pants.  Fregeau announced the presence of the firearm and a brief struggle ensued.  Harris escaped and fled on foot.  After a brief chase, Harris was subdued and placed under arrest.[1]

Harris argues that all evidence seized as a result of the events of January 1, 2020 should be suppressed on one of several alternative grounds.  First, he argues that all the evidence seized should be suppressed because Officer Price lacked a sufficient basis to initiate the

---

[1] The Court notes that Defendant Harris attached an affidavit to his motion.  *See* doc. 26 at 8-9.  Although the Court has accepted such affidavits as satisfying this Court's Local Rules, *see* S.D. Ga. L. Crim. R. 12.1, and supporting a defendant's entitlement to a hearing on his motions, they are not competent evidence in the absence of testimony.  *See, e.g. United States v. Lawton*, 2017 WL 3327064, at * 1 (S.D. Ga. July 14, 2017) ("[Defendant's affidavit and argument fetched him a hearing, [cit.], but once there he could not stand on his affidavit since it remained hearsay.").

traffic stop. *See* doc. 26 at 4. Even if the stop were justified at its inception, Harris argues that a search of his person would not have been justified. *Id.* at 5-6. He finally makes a cursory argument that a search of Harris' wallet was not justified, assuming that neither the stop nor prior search were. *Id.* at 6.

## I. Traffic Stop

Harris' argument that Officer Price lacked a sufficient basis to initiate a traffic stop depends upon his interpretation of a police report provided by the Government in discovery. *See* doc. 26 at 4. Specifically, he contends that the report's indication that the stop was based, in part, on reports of traffic infractions by a car matching the description of Harris' "from an 'unknown unit.'" *Id.*; *see also id.* at 2 (citing Price's report, which was admitted at the hearing, *see* doc. 44-2 at 3, doc. 44-4 at 4). Defendant contends that this makes the report an "anonymous tip," subject to the additional scrutiny applicable to information law enforcement receives from civilian informants. *See* doc. 26 at 4 (citing *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996)). The Government's response, doc. 32 at 2, 5, and Price's testimony at the hearing, clarified that the report came, not from an "informant," but from another law

enforcement officer.[2] However, the question of whether that information was reliable, or could have provided a sufficient basis for Price to stop Harris is moot, as Price testified that he personally observed traffic violations before he initiated the stop.[3]

The Eleventh Circuit has explained that "a traffic stop is a constitutional detention if it is justified by reasonable suspicion under *Terry* [*v. Ohio*] or probable cause to believe a traffic violation has occurred under *Whren v. United States*, [cit.]." *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). Furthermore, "[r]easonable suspicion is determined from the totality of the circumstances and collective knowledge of the officers." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006). Price testified at the hearing that he observed the vehicle fail to maintain its lane and then make a turn across

---

[2] The basis for that showing was that the report was transmitted on a secure radio channel only accessible to law enforcement. Although the Government could not identify the particular individual who broadcast the report, the evidence is sufficient to show that the individual could not have been a member of the general public.

[3] Defendant argued at the hearing that the initial tip might be relevant because it provided context for the officers' decision to follow Harris' vehicle. However, as defense counsel conceded, their subjective reasons are ultimately irrelevant; the officers could "follow who they want to." Since there is no dispute that Price could follow Harris' vehicle on a public street for any reason or none, the source of the radio broadcast and its accuracy are moot, given Price's subsequent direct observation of traffic violations.

traffic. As the Government's brief points out, those observations alone provided probable cause of a violation of O.C.G.A. § 40-6-48 and justified the stop. *See United States v. Woods*, 385 F. App'x 914, 916 (11th Cir. 2010) ("We have held that there is probable cause to conduct a traffic stop where an officer observes a defendant commit a non-criminal traffic violation such as speeding or making an illegal lane change.").

Officer Price's fully credible testimony, therefore, shows that, regardless of the accuracy of the radio report, he had sufficient probable cause for the traffic stop from his own observations. To the extent that the motion seeks to suppress evidence based on an alleged lack of probable cause for the initial stop, it should be denied.

## II. Search of Harris' Person

Assuming, as discussed above, that the traffic stop was justified, defendant concedes that officers were permitted to remove Harris from the vehicle. *See* doc. 26 at 5 (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997)) ("Once a vehicle is lawfully stopped, an officer may order the occupants to exit the vehicle."). He goes on to discuss the Fourth Amendment's requirements that limited searches of a suspect's outer clothing for weapons are only permissible based on an officer's reasonable

5

suspicion that the suspect is armed and dangerous. *See id.* at 5-6; *see also United States v. Packer*, 375 F. App's 976, 979 (11th Cir. 2010) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). However, the Government's response, confirmed by video recorded by Officer Fregeau's body-worn camera and his credible testimony, indicates that there was no search; the firearm was plainly visible. It's seizure, therefore, was justified as a safety measure.

Officer Fregeau testified at the hearing that he was following Officer Price's car when Price initiated the traffic stop. Since he was following, when he encountered Harris and Price, Harris had already exited his vehicle. He testified that as he approached the two, and his view cleared the obstruction of Harris' vehicle, he immediately observed "the driver . . . had a gun in his waistband." He was absolutely certain that the black handle he observed protruding from the waistband of Harris' pants was a firearm. A still image, captured from Fregeau's body-worn camera video, confirms that a black object is visible protruding from the waistband of Harris' pants. *See* doc. 44-2 at 10. Fregeau immediately seized Harris' hands to prevent him from grabbing the weapon. While Fregeau restrained Harris, Officer Price seized the firearm.

This Court has previously discussed that seizure of a firearm, pursuant to a lawful traffic stop, is permissible on officer-safety grounds, independent of any specific information suggesting possession of the firearm is otherwise illegal. *See United States v. Alexander*, 2017 WL 7409987, at * 6 (S.D. Ga. Nov. 30, 2017). Relying principally on the United States Court of Appeals for the Fourth Circuit's *en banc* opinion in *United States v. Robinson*, 846 F.3d 694 (4th Cir. 2017), the Court concluded, "whenever during a lawful traffic stop an officer reasonably suspects that a vehicle occupant is armed, the officer is warranted in the belief that his safety is in danger and may proceed to frisk the individual and remove the weapon for his own safety." *Id.* (citing *Robinson*, 846 F.3d at 700-01); *see also United States v. Hunter*, 798 F. App'x 511, 518 (11th Cir. 2020) (recognizing an officer who "reasonably believes that his safety, or the safety of others , is threatened," based on a suspect's possession of a firearm was justified in seizing the weapon (internal quotation marks and citations omitted)).

Given Officer Fregeau's wholly credible testimony that he immediately observed and identified the firearm in Harris' possession, there was no violation of the Fourth Amendment in the officers' actions

in seizing either Harris or the firearm in order to protect their safety and the safety of others in the immediate area. To the extent that Harris seeks to suppress evidence on the basis that the discovery and seizure of the firearm violated the Fourth Amendment, then, his motion should be denied.

### III.  Search of Harris' Wallet

Harris' entire argument that a search of his wallet violated the Fourth Amendment is conditional upon a determination that either his initial seizure in the traffic stop or the subsequent search of his person, which disclosed the firearm, violated the Fourth Amendment. The entirety of his brief's argument states: "The Government having failed to establish a justification for the stop of the Defendant and the detention of the Defendant as referenced in sub[-]sections A [concerning the traffic stop] and B [concerning the search for and seizure of the firearm] the warrantless search of the Defendant's wallet was without justification and should be suppressed." Doc. 26 at 6. During defense counsel's oral argument at the hearing, he did not raise any argument concerning the search of Harris' wallet. Since, as explained above, neither the stop nor the seizure of the firearm violated the Fourth Amendment, the Court

might simply deny suppression. *See, e.g., United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) ("A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture" in resolving motions to suppress evidence). Since the Government bears the burden to establish the propriety of a warrantless search, however, *see, e.g., United States v. Knight*, 336 F. App'x 900, 904 (11th Cir. 2009), the Court will address the search of the wallet.

The Government argues, and defendant does not dispute, that after their brief altercation after discovering the gun, Harris fled from the officers. After a brief chase, he was subdued and arrested. Other than his challenge to the initial stop and the purported search that revealed his firearm, Harris does not argue that his arrest violated any constitutional right or statute. The uncontroverted evidence from Officer Price's police report indicates that officers had ample probable cause for his arrest. *See* doc. 32 at 9 (listing "failing to maintain lane, driving under the influence, and resisting and fleeing from the police" as bases of probable cause for Harris' arrest). Price also testified that Harris was taken into custody following his arrest. Thus, as the Government contends, and Harris has not disputed, the search of the wallet amounted

to no more than an "inventory" search incident to Harris' arrest and continued detention. *See* doc. 32 at 9 (citing *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (recognizing searches and seizures of "personal property such as a wallet found on the person of the arrestee."); *United States v. Edwards*, 415 U.S. 800, 803 (1974)); *see also, e.g., Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("[W]e hold that it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."). To the extent that Harris seeks to suppress evidence discovered in the search of his wallet, following his arrest and detention, therefore, the motion should be denied.

Accordingly, the Government has established that Officer Price had sufficient probable cause to stop Harris, based on his personal observation of traffic violations. Once Harris was stopped and left his vehicle, the record establishes that his gun was in plain view. Officer Fregeau's wholly credible testimony establishes that he immediately identified the firearm. Based on that identification, concern for officers' and the public's safety justified the seizure of that firearm. Finally, once

Harris was arrested and detained, there was no Fourth Amendment violation in the inventory search of his wallet. His suppression motion, therefore, should be **DENIED**. Doc. 26.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 31st day of March, 2021.

_____
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia